IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-978-BO

| | | |
|---|---|---|
| KESHEENA TROY,<br>Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | ORDER |
| MARTIN O'MALLEY,<br>*Commissioner of Social Security*,<br>Defendant. | )<br>)<br>)<br>) | |

This cause comes before the Court on plaintiff's complaint, which seeks review of the final decision of the Commissioner of Social Security and entry of judgment in her favor. The appropriate briefs pursuant to the Supplemental Rules for Social Security have been filed, [DE 14, 18], and a hearing was held before the undersigned on June 28, 2024, at Raleigh, North Carolina. In this posture, the matter is ripe for disposition. For the following reasons, the decision of the Commissioner is reversed and the matter is remanded for an award of benefits.

## BACKGROUND

Plaintiff brought this action under 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her application for disability and disability insurance benefits pursuant to Title II of the Social Security Act. Plaintiff filed the instant application for disability benefits in March 2021 alleging disability beginning November 24, 2020. After initial denials, plaintiff's claim proceeded to a video hearing before an Administrative Law Judge (ALJ). The ALJ denied plaintiff's application for disability insurance benefits by decision dated November 21, 2022. The

ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. Plaintiff then filed her complaint in this Court.

Under the Social Security Act, 42 U.S.C. § 405(g), this Court's review of the Commissioner's decision is limited to determining whether the decision, as a whole, is supported by substantial evidence and whether the Commissioner employed the correct legal standard. *Richardson v. Perales,* 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart,* 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation and citation omitted).

An individual is considered disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further provides that an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Regulations issued by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If a decision regarding disability can be made at any step of the process the inquiry ceases. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, if the Social Security Administration determines that the claimant is currently engaged in substantial gainful activity, the claim is denied. If not, then step two asks whether the

claimant has a severe impairment or combination of impairments. If the claimant has a severe impairment, it is compared at step three to those in the Listing of Impairments ("Listing") in 20 C.F.R. Part 404, Subpart P, App. 1. If the claimant's impairment or combination of impairments meets or medically equals a Listing, disability is conclusively presumed. If not, at step four, the claimant's residual functional capacity (RFC) is assessed to determine if the claimant can perform his past relevant work. If the claimant cannot perform past relevant work, then the burden shifts to the Commissioner at step five to show that the claimant, based on his or her age, education, work experience, and RFC, can perform other substantial gainful work. If the claimant cannot perform other work, then he or she is found to be disabled. *See* 20 C.F.R. § 416.920(a)(4).

At step one, the ALJ determined that plaintiff meets the insured status requirements through December 31, 2025, and that she had not engaged in substantial gainful activity since her alleged onset date. The ALJ found that plaintiff's traumatic brain injury, history of multiple facial fractures and skull fracture, and neurocognitive disorder were severe impairments at step two but that either alone or in combination plaintiff's impairments did not meet or medically equal a Listing at step three. The ALJ found that plaintiff had the RFC to perform a reduced range of light work with both exertional and nonexertional limitations. The ALJ determined that plaintiff was unable to perform her past relevant work as a nurse but that, based upon her age, education, work experience, and RFC, there were job which exist in significant numbers in the national economy which plaintiff could perform. Those jobs included hand packager, blending tank tender helper, and shipping/receiving weigher. Accordingly, the ALJ determined plaintiff was not disabled through the date of his decision.

Plaintiff argues first that the ALJ erred in determining that plaintiff's medical conditions did not meet or medically equal the Listing criteria for Listing 12.02. The Court agrees.

3

In November 2020, plaintiff was involved in a motor vehicle accident in which the vehicle she was driving collided with a backhoe at approximately forty-five miles per hour. Tr. 352. The accident caused a "significant crush injury" of the right side of her face. Tr. 347. She sustained "multiple extensive facial fractures, Epidural hematoma, bifrontal and R temporal hemorrhagic contusions, open skull fracture, extensive skull base fractures, depressed R temporal bone fracture with associated pneumocephalus, R eye injury, [and] bilateral pulmonary contusion[,]" among other injuries. Tr. 346. In addition to other procedures, plaintiff underwent extensive reconstructive neurosurgical and maxillofacial surgery. Tr. 358-367.

Shortly after her accident, plaintiff was evaluated and demonstrated severe memory deficits, impaired cognition, and was found to be impulsive and inattentive; it was determined she would benefit from acute inpatient rehab to assist in recovering the ability to perform her activities of daily living. Tr. 335, 656, 666. Plaintiff engaged in both general and speech and language rehabilitation and continued to receive treatment for her multiple injuries and their effects. *See, e.g.,* Tr. 903-909; Tr. 852; 302. In March 2022, a State Agency Consultative Examiner found that plaintiff would have difficulty sustaining sufficient attention to perform simple, routine, repetitive tasks and that plaintiff, previously a registered nurse, was functioning in the range of borderline intelligence. Tr. 1032. A full evaluation of plaintiff's mental functioning was conducted in July 2022 and all neuropsychological domains apart from basic orientation, motor function, and attention were "highly affected" and her performance was rated as severe. Tr. 1063. The evaluator noted that plaintiff is permanently disabled, citing 12.02, due to her brain injury.

Listing 12.02, which addresses neurocognitive disorders, requires a claimant to satisfy the criteria set forth in paragraphs A and B or A and C:

> A. Medical documentation of a significant cognitive decline from a prior
> level of functioning in one or more of the cognitive areas:

4

        1. Complex attention;
        2. Executive function;
        3. Learning and memory;
        4. Language;
        5. Perceptual-motor; or
        6. Social cognition.
    AND
    B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
        1. Understand, remember, or apply information (see 12.00E1).
        2. Interact with others (see 12.00E2).
        3. Concentrate, persist, or maintain pace (see 12.00E3).
        4. Adapt or manage oneself (see 12.00E4).
    OR
    C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
        1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
        2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.02. Neurocognitive disorders include disorders which are "characterized by a clinically significant decline in cognitive functioning", including, as is relevant here, traumatic brain injury or TBI. *Id.* § 12.00B1. The question before the ALJ was whether plaintiff's condition met or equaled the paragraph A and B or A and C criteria, and the ALJ determined that plaintiff's TBI did not satisfy the B or C criteria. The ALJ's decision is not supported by substantial evidence.

First, plaintiff satisfies the A criteria because she has suffered from a significant cognitive decline from her prior level of function in, at a minimum, complex attention, learning and memory, and executive function. Prior to her accident, plaintiff was a registered oncology nurse. Just after the accident, plaintiff required "max cues to complete basic simple task[,]" Tr. 335, and as her healing progressed she continued to suffer from impaired memory and cognition. Tr. 656. More

5

than a year after her accident she was found to perform below the first percentile in an executive function test. Tr. 1059-67.

Plaintiff also satisfies the paragraph B criteria. As described above, a claimant must demonstrate either extreme limitation in one domain or marked limitation in two domains to satisfy the paragraph B criteria. The ALJ found plaintiff's limitations in the domains described in paragraph B to be mild or moderate. Tr. 13-14. A claimant has moderate limitations when her ability to function independently, appropriately, and effectively in an area on a sustained basis is fair, and a claimant has marked limitations when her ability to function in an area on a sustained basis is seriously limited. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00F2.

Despite the ALJ's cherry picking of the evidence, the substantial evidence in the record demonstrates that plaintiff has marked limitations in the domains of understanding, remembering, or applying information[1] and adapting or managing oneself.[2] The consultative examiner found that

---

[1] "This area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities. Examples include: Understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00E1.

[2] "This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00E4.

6

plaintiff would have difficulty carrying out even simple, routine, repetitive tasks. While plaintiff's math ability was noted as good and her thought processes appeared goal-directed and coherent, the examiner estimated plaintiff to be functioning in borderline range of intelligence. She could recall all five objects presented to her immediately, but none after the passage of five minutes. *See* Tr. 1029-1032. Plaintiff's comprehensive neuropsychological study supports the consultative examiner's opinions and findings regarding plaintiff's intelligence, memory, and ability to perform simple, routine, repetitive tasks. Testing placed plaintiff's Beta IQ at 67. Plaintiff performed below the first percentile and at the second percentile in executive function tests, in the second percentile for immediate recall, and below the first percentile for delayed recall, retention, and recognition. Tr. 1062. The ALJ relied on plaintiff's ability to understand the instructions given to her during the neuropsychological testing to find she had only mild to moderate limitations, but failed to address the results of the testing, which were deemed to be reliable.

In finding that plaintiff's ability to adapt and manage herself was moderate, the ALJ cited that she lives with her mother, who takes plaintiff to her appointments and assists plaintiff with daily needs, and that plaintiff cannot drive and does not handle stress well. Again, the ALJ failed to address the results of plaintiff's comprehensive neuropsychological testing, including severe deficits in executive functioning and problem solving as well as a finding that plaintiff cannot live independently. The consultative examiner also noted that if awarded benefits plaintiff should not manage them on her own. Plaintiff's hearing testimony supports that her daily activities are extremely limited, absent attending doctor's appointments or attending to basic household chores, with which she will often need assistance. Tr. 47-48.

None of the evidence cited by the ALJ would support that plaintiff had only moderate limitations in her ability to respond to workplace demands, adapt her behavior to changes, or set

7

realistic goals. Rather, the substantial evidence in the record supports that plaintiff would have, at a minimum, marked limitations in this functional domain.

In addition to the ALJ's discussion at step three, the Court has considered the ALJ's treatment of the evidence when assessing plaintiff's residual functional capacity. *See Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018). The ALJ found the opinion of the neuropsychological examiner not to be persuasive and noted the "suggestion of some symptom enhancement in an examination scheduled for disability adjudication purposes." Tr. 20; *see also* Tr. 19 ("One cannot help but notice that evaluations done for the purpose of establishing disability have greater and more severe findings than routine treatment notes."). But the ALJ does not address that plaintiff was found to be giving "good effort" in her tests and that her tests results were considered valid. Tr. 1063. In his decision, the ALJ relied heavily on a treatment note describing the "remarkable recovery" plaintiff had made; the full notation highlights plaintiff's "remarkable recovery considering the extent of her initial craniofacial trauma." Tr. 277. The record is replete with treatment notations regarding plaintiff's problems with memory, concentration, and headaches. While there are records which show her abilities to be within normal limits, e.g. Tr. 903, 987, plaintiff also has since her accident demonstrated deficits in memory, problem solving, safety awareness, and self-care. *See, e.g.,* Tr. 638.

Whether to remand for a new decision or reverse for an award of benefits is within this Court's discretion. *Edwards v. Bowen*, 672 F. Supp. 230, 237 (E.D.N.C. 1987); *see also Evans v. Heckler*, 734 F.2d 1012, 1015 (4th Cir. 1984). Courts in the Fourth Circuit "have awarded disability benefits without remand where the record clearly establishes the claimant's entitlement to benefits and another ALJ hearing on remand would serve no useful purpose." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 111 (4th Cir. 2020). As the substantial evidence in the record

Case 7:23-cv-00978-BO-BM   Document 23   Filed 08/14/24   Page 8 of 9

supports the conclusion that plaintiff meets or equals Listing 12.02, remand would serve no purpose. Accordingly, the Court in its discretion will reverse for an award of benefits.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is REVERSED and this matter is remanded for an award of benefits. The clerk is DIRECTED to enter judgment and close the case.

SO ORDERED, this 13 day of August 2024.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE